Mr. Justice Wylie
delivered the following dissenting opinion :
I am unable to agree with my brothers in the decision which is announced in this case, and although I have not prepared any formal opinion expressing the grounds of my dissent, I propose to state very briefly some of them.
*97 The plaintiff here, Talbot C. Murray, at the April Term, 1876, recovered a judgment on the law side of this court against Wilson Ager for $2,164.66, with interest and costs. 'On this judgment an execution was issued and return was made nulla bona. Wilson Ager, the defendant, must be regarded, therefore, as insolvent, as having no visible property •on -which an execution at law might be levied. The present proceeding is by a bill in equity, filed by the judgment creditor for the purpose of reaching the interests of the •defendant in a patent right. The prayer of the bill is that pending the suit, the defendant might be [restrained from •selling or assigning his patents; that said patents might be sold under the decree of the court, and the proceeds of the sale applied to the payment of the judgment, and that the defendant might be compelled to execute such assignment of his patents as might be necessary to vest title in the purchaser in conformity with the patent law.
Now, here is a bill the object of which is to reach a species of property which is not subject to execution at law. I think jt- is a practice of chancery jurisdiction, without exception, that a bill in equity may be filed for the purpose of reaching property of the defendant which is subject to execution, if the property is concealed, or if the property is covered with incumbrances so that the execution at law cannot reach it. The object of the bill in equity is to uncover the property for the purpose of subjecting it to the satisfaction of the judgment.
But here is a new species of bill in equity, the object of which is not to subject property subject to execution at law to the payment of the debt, but to subject property to execution which is not subject to execution at law. When was it ever heard before that a bill would be sustained by a chancery court for the purpose of reaching property which is not subject to execution at law? I have heard •of bills in equity being filed in aid of a judgment at law on account of the inability of the judgment creditor to collect his debt out of property! which is subject to execution, but this is the first instance that has ever come *98 under my observation, I feel very sure, and the first instance which I think will be found in the books, in which a bill has been sustained on this new ground, to wit, for the purpose of subjecting to an execution at law a new and peculiar kind of property which it is admitted is not liable to execution at law at all.
Again, it is said that it would be a very anomalous condition of things that a man should be permitted to invest all his money, time and talent in valuable inventions, worth millions perhaps, and yet niay set his creditors at defiance. I do not see any strength in the argument. If the inventions are profitable they will return to him in tangible property,, property which would be subject to execution, and which might be reached by his creditors. So that I do not think this argument of inconvenience is of much strength in the case.
In all the history of the English chancery courts, and in all the history of the chancery courts of this country, iu all the States of this country, up to this day, no such bill as the present one can be found. It is very true that Congress did provide in the bankrupt law that patent rights might be assigned — should be assigned to the assignee in bankruptcy. But that does not reach this case. Congress sometimes may pass a law, and often does, which requires to be construed by the courts ; and the latter look into and see whether the enactment is within the powers of Congress. But admitting that Congress had power to make such a provision in the bankrupt law, making patent rights assignable, it does not reach this case. If this is a statutory property which is of a peculiar character, it can only be disposed of in the manner provided for by the statute. Chief-Justice Taney and Judge Nelson, and other judges of the Supreme Court, have severally expressed the opinion that all the patentee’s rights arise under the statutes, that he has no common law rights at all. The character of the property and everything that belongs to it is statutory.
Now, in the first article of the Constitution of the United States, it is declared that Congress shall have the power to promote the progress of science and useful arts by securing *99 to authors and inventors the exclusive right to their respective writings and discoveries. How can this provision of the Constitution be carried out if the moment an invention is made it is to be subject to execution and sale by a creditor. That would not promote the progress of science and the useful ai’ts, it would be a discouragement to inventors.
Then the statute in regard to the property declares how it shall be disposed of. With this view the statute provides that the inventor shall have the exclusive right in a patent for himself or his assignees, and declares how he may assign it, and that assignment can only be made by deed and the deed must be witnessed by two persons. It must be, so far as the subsequent purchaser is concerned, recorded in the'Patent Office. Here is a special patent secured to the inventor by the Constitution, and the Constitution declares that the object of giving this exclusive privilege is to promote the progress of science and the useful arts. It gives him the exclusive right in such cases; and yet the very day after the patent is obtained it is subject to execution, and execution here in the District of Columbia upon the whole interest.
■ Why, this patent right is as extensive as the Union. If an inventor’s interest, which is as extensive as the whole United States, which pervades the territories and all the States, may be levied upon and sold under a petty execution in the District of Columbia, that is certainly a remarkable feature of this jurisdiction. As my brother says, Edison’s patent may be taken and sold in Key W est or in Alaska.
Where did we get such jurisdiction as that ? It is said that it belongs to the nature of the property, that it is a kind of intangible property, impalpable, and at the same time as all pervading as the atmosphere itself. But by what authority does a court in the District of Columbia undertake to proceed upon property of that'kind which is as extensive as the Union, and sell it under one of our' judgments? I should not object so much to sell the interest so far as the territory of the District of Columbia is concerned, but I understand the object of this bill is to sell for the whole Union. If some justice of the peace at Key West, or in Alaska, by chance should find somebody who was a creditor of Edison, *100 he might sell oat the whole of the inventor’s property, under a proceeding of this kind, in one of those remote corners of the country.
It appears to me that the whole policy of the law would be overthrown by such a proceeding. I believe that inventors belong to a class of people who are taken under the especial protection of the Constitution of the United States for the purpose of encouraging them, and it is so declared in that instrument. It is for the purpose of promoting the progress of science and useful arts that the exclusive property in the invention is given to the inventor, and in my opinion it is not subject to execution. As to its creating an aristocracy of property, I see nothing in that at all, because, as I have said, if the invention is of any value it will produce property that will be within the reach of creditors. But in the beginning the patentee is generally poor and his invention is not upon the market; perhaps he has not fairly introduced it. It takes time and it takes capital for the purpose of establishing the market value of the invention. It was for the purpose of covering that period of time that the exclusive use was secured to the inventor, and I do not think it is within the intention of the Constitution to allow a creditor of an inventor to pounce down upon his invention before it is established, and before it is introduced to the public and sell him out, lock, stock and barrel. That would not promote the progress of useful arts by any means. He is poor, and if the invention, the work of his brain, is to be seized the moment it is born, and sold out to somebody else under execution, it would be no encouragement to men of that kind. And I feel more free to express my own judgment in regard to the case from the fact that, no example has been produced either in the English books or from our own in which a thing of this kind has been attempted.
The case in 14th Howard, Stevens v. Cady, contains what is admitted to be an obiter dictum of Judge Nelson. In that case it was decided that the copperplate map carried no right to the copyright with it, it merely carried the copperplate. That was the only question before the court. Judge Nelson does proceed to say that the copyright doubtless may be *101 reached by a creditor’s bill, but the same case, having come again before the same court, Judge Curtis, in delivering the Opinion of the court, says, there are difficulties in regard to the subject of laying an execution upon patent rights in addition to those that were mentioned by Judge Nelson upon a former occasion, and he says that one of these difficulties arises from the peculiar character of this property, ah interest in a copyright which pervades the whole country, and it would not be right in a State, like Rhode Island, for the legal jurisdiction there to sell the whole interest in the copyright. So that I cannot consider this question as having been yet. determined by the Supreme Court of the United States. Here is an obiter of Judge Nelson which seems to incline one way, and a very strong one of Judge Curtis, in the same case, in the other direction, and, therefore, I have not felt bound by the authority of that case. This property, in my opinion, cannot be sold in this way.